[Cite as *CitiMortgage, Inc. v. Kermeen*, 2012-Ohio-1655.]

IN THE COURT OF APPEALS FOR DARKE COUNTY, OHIO

CITIMORTGAGE, INC.                          :

    Plaintiff-Appellant                 :            C.A. CASE NO.     2011 CA 2

v.                                          :            T.C. NO.     10CV569

CHRISTOPHER G. KERMEEN, et al.              :            (Civil appeal from
                                                          Common Pleas Court)
    Defendants-Appellees              :


                                            :

        . . . . . . . . . .

**O P I N I O N**

Rendered on the    13th    day of     April    , 2012.

        . . . . . . . . . .

MICHAEL J. SIKORA III, Atty. Reg. No. 0069512 and RICHARD T. CRAVEN, Atty. Reg. No. 0082273, 685 S. Front Street, Columbus, Ohio 43206
      Attorneys for Plaintiff-Appellant

SCOTT D. RUDNICK, Atty. Reg. No. 0000853 and NATHAN D. HOSEK, Atty. Reg. No. 0083994, 121 West Third Street, Greenville, Ohio 45331
      Attorneys for Defendants-Appellees

        . . . . . . . . . .

DONOVAN, J.

      **{¶ 1}** This matter is before the Court on the Notice of Appeal of CitiMortgage, Inc., filed March 2, 2011. CitiMortgage appeals from the trial court's decision denying its motion for default judgment, motion for an order deeming the

averments in the complaint admitted, and/or motion for summary judgment, and awarding half of the gross sale proceeds of the property at issue, located at 2412 Cox Rd., Greenville, to Kimberly Kermeen.

**{¶ 2}** On July 29, 2010, CitiMortgage filed a "Complaint in Foreclosure and Reformation of Mortgage" against Christopher G. Kermeen and Kimberly L. Kermeen. CitiMortgage alleged that it is the holder of note and a loan modification agreement which are secured by a mortgage, and that by reason of default under the terms of the note, Christopher owes $79,686.13, together with interest at the rate of 6.25% per year, from April 1, 2009, plus court costs, advances and other charges. CitiMortgage alleged that it was assigned the mortgage. The Complaint provides that the "parties intended that the mortgage from Christopher G. Kermeen and Kimberly L. Kermeen would secure a valid first lien upon the fee simple interest of the premises and plaintiff's predecessor in interest would not have granted or permitted a disbursement or fund[s]" to the parties "if it had known that it would acquire a mortgage against only one-half of the real estate." The complaint further provides, "due to an inadvertent mistake on the part of the preparer of the mortgage, the titleholder's name Kimberly L. Kermeen was left out of the granting clause." Citimortgage asserts that the "mistake was the result of scrivener's error and mutual mistake of fact between the parties to said document," and that it "is entitled to have [the mortgage] reformed to properly state Christopher G. Kermeen and Kimberly L. Kermeen[,] husband and wife[,] in the Granting Clause." Citimortgage asserted that it is entitled to a court order for the sale of the property at sheriff's sale.

**{¶ 3}** Attached to the Complaint as Exhibit A is the Note, dated September 12,

2002, signed by Christopher Kermeen, pursuant to which he promised to pay $70,000.00 plus interest to First Residential Mortgage - Louisville. Attached to the Note is an "Allonge to Note," which provides

> Allonge to Note Dated September 12, 2002
>
> In Favor of First Residential Mortgage - Louisville
>
> And Executed by Christopher G. Kermeen
>
> Pay to the Order of ABN AMRO Mortgage Group, Inc.
>
> Without Recourse First Residential Mortgage - Louisville

The signature at the end of the allonge is illegible, but the person is identified as a "corporate agent."

{¶ 4} Attached to the Complaint as Exhibit B is the Loan Modification Agreement ("Agreement"), between Christopher and CitiMortgage, which provides that the "New Unpaid Principal Balance" on the Note is $85,134.36. The Agreement states, "This Loan Modification Agreement ('Agreement'), made 10/19/07, between CHRISTOPHER G KERMEEN and . Single (Borrower) (sic) * * * and CitiMortgage, Inc. (Lender) * * * amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the 'Security Instrument') dated 09/12/02 * * * and (2) the Note bearing the same date as, and secured by the Security Instrument * * * ."

{¶ 5} Paragraph 5 of the Agreement provides

> Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and

Security Instrument will remain unchanged, and the Borrower and Lender will be bound by and comply with, all of the terms and provisions thereof, as amended by this Agreement.

{¶ 6} Paragraph 6 of the Agreement provides

It is mutually agreed that said security instrument shall continue a first lien upon the premise and that neither the obligation evidencing the aforesaid indebtedness nor the security instrument the same (sic) shall in any way be prejudiced by this agreement, but said obligation and security instrument and all the covenants and agreements thereof and the rights of the parties thereunder shall remain in full force and effect except as herein expressly modified.

{¶ 7} The Agreement is signed by Christopher, above a preprinted line that reads, "Borrower - Christopher G. Kermeen," and "9-28-07" appears next to his signature. There are three blank signature lines with "Borrower" preprinted beneath them under Christopher's signature. The Agreement is initialed by Stacey Andrew, Assistant Vice President of CitiMortgage, above a preprinted line that reads, "Lender - Stacey Andrew Assistant Vice President," and "10/29/07" appears next to her signature. Christopher is named in the notary public's acknowledgment clause.

{¶ 8} Attached to the Complaint as Exhibit C is a copy of the Mortgage. In the first section, entitled "DEFINITIONS," "Borrower" is defined as "Christopher G. Kermeen, a married man," and the Mortgage further provides, "Borrower is the mortgagor under this Security Instrument." First Residential Mortgage - Louisville is identified as the "Lender."

"Note" is defined as "the promissory note signed by Borrower and dated September 12, 2002." The granting clause appears immediately after the definitions, in a section entitled "TRANSFER OF RIGHTS IN THE PROPERTY," and it provides

> This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions, and modifications of the Note; and (ii) the performance of the Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property * * *

> TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

> BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

{¶ 9} Paragraph 13 of the Mortgage provides

> Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this

Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument of the Note without the co-signer's consent.

{¶ 10} Pages 1 -7 bear the initials of Christopher and Kimberly. On the final page, page 8, the mortgage provides, "BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it." Christopher's signature appears on a typed signature line above a typed version of his name. Kimberly's signature appears on a handwritten second signature line above a hand-printed version of her name. The Mortgage was notarized by Tracy L. Powell. The acknowledgment provides, "The foregoing instrument was acknowledged before me this 9-12-02 (date) by Christopher G Kermeen (name of person acknowledged)." The parties' initials do not appear on this page. Exhibit A to the Mortgage is a description of the property, which appears to contain Christopher's initials. The Mortgage was recorded in Darke County on September 25, 2002, in Book 305, Page 2675.

{¶ 11} Attached to the Complaint as Exhibit D is an Assignment of Mortgage, which provides in part that First Residential Mortgage - Louisville grants, sells, assigns

transfers and conveys to ABN AMRO Mortgage Group, Inc., "a certain Mortgage dated September 12, 2002, made and executed by Christopher G. Kermeen, a married man * * * ." The assignment was recorded in Darke County on September 25, 2002, in Book 305, Page 2684.

{¶ 12} The record establishes that the Kermeens were properly served with a copy of the Complaint by certified mail on July 31, 2010 and August 4, 2010.

{¶ 13} A Preliminary Judicial Report, dated April 15, 2010, indicates that the record title to the property at issue is vested in Christopher G. Kermeen and Kimberly L. Kermeen. Schedule B to the Preliminary Judicial Report lists "exceptions" to the report, noting that Kimberly is not mentioned in the granting clause or acknowledged in the notary clause in the mortgage from Christopher, "a married man," to First Residential Mortgage - Louisville, although "she does sign the Mortgage, and she is a titleholder."

{¶ 14} On September 3, 2010, CitiMortgage filed a motion for default judgment, asserting that Christopher and Kimberly are in default of motion or answer. On September 10, 2010, the court set the matter for trial, noting in its Scheduling Entry that it prefers "to adjudicate cases on their merits, not being satisfied with the supporting affidavit filed herein, seeking to determine compliance with applicable laws regarding validity of the note and mortgage * * *."

{¶ 15} On December 30, 2010, CitiMortgage filed its joint motion for default judgment/ motion for an order deeming the averments of the Complaint for foreclosure and reformation of the mortgage admitted/ motion for summary judgment. CitiMortgage asserted that it is entitled to default judgment against the Kermeens based upon their failure

to respond to the Complaint. CitMortgage further asserted that it is entitled to summary judgment on the Note and Agreement, foreclosure of the Mortgage and reformation of the Mortgage, based upon multiple affidavits.   Finally, CitiMortgage asserted that the Kermeens admit that it is entitled to judgment in its favor.

{¶ 16}   Attached to CitiMortgage's motion is the affidavit of Jim Madonia, which provides that he is "employed by Surepoint Lending abn (sic) First Residential Mortgage Network, Inc. ('First Residential')."   Madonia avers that he has been employed by First Residential as a Manager, and that he is authorized to testify on its behalf.   Madonia avers that on September 12, 2002, Christopher and Kimberly held title to the property at issue. Madonia avers that he served as the Manager for First Residential in connection with the loan at issue, and that First Residential "intended to encumber the entire fee simple interest of Christopher Kermeen and Kimberly Kermeen in the property and intended to hold the first and best lien on the Property."   Madonia asserts that First Residential required Christopher and Kimberly to execute a mortgage in favor of it, as lender, and he authenticated a copy of the Mortgage attached to his affidavit.   According to Madonia, based upon his interaction with Christopher and Kimberly "and the documents contained within the loan file," he understood that Christopher and Kimberly "knew that the Mortgage intended to encumber their entire fee simple interest in the property."   Finally, Madonia avers that Kimberly's name was omitted from the granting clause and acknowledgment clause due to scrivener's error, and the fact that she signed the Mortgage without limitation and initialed pages 1 - 7 "evidences that her name was inadvertently omitted."

{¶ 17}   Also attached to CitiMortgage's motion is the affidavit of Cindy Schneider,

who averred that she is employed by CitiMortgage, successor by merger to ABN AMRO Mortgage Group, Inc. Schneider averred that she worked as a Business Operations Analyst. According to Schneider, CitiMortgage has custody of and maintains records related to the loan documents concerning the property at issue, including the Note, Loan Modification Agreement and Mortgage, which were made and kept in the ordinary course of business. Schneider asserts that at the September 12, 2002, closing on the loan, Christopher executed a Note in favor of First Residential, and CitiMortgage is the current holder of the Note, and that First Residential required the Kermeens to execute a Mortgage in its favor to secure the Note. Schneider authenticated a copy of the Mortgage, attached to her affidavit. Schneider averred that First Residential intended to encumber the entire fee simple interest of the property at issue. Further, according to Schneider, on September 23, 2002, First Residential assigned the Mortgage to ABN AMRO Mortgage, Inc., and the assignment was recorded in Book 305, Page 2684 on September 25, 2002. Schneider authenticated a copy of the assignment, attached to her affidavit.

{¶ 18} Schneider asserted that ABN AMRO Mortgage, Inc. and CitiMortgage merged on August 21, 2007, and she authenticated a Certificate of Merger attached to her affidavit. She further averred that Christopher and CitiMortgage entered into a Loan Modification Agreement, and she authenticated a copy thereof attached to her affidavit. Schneider averred that on August 10, 2009, Christopher and Kimberly provided CitiMortgage with financial information in a Financial Statement relative to the Mortgage and loan, a copy of which is attached to the affidavit and authenticated by Schneider. Finally, Schneider averred that the Note and Mortgage are in default, and $79,686.13 plus interest is

due.

{¶ 19} The affidavit of Tracy L. Blankenship is also attached to CitiMortgage's motion. Blankenship averred that she has been a notary public in Ohio from 2001 - 2006, that she is familiar with "the requirements of notarizing and acknowledging a mortgage," having served on numerous transactions in which mortgages were given to lenders. Blankenship served as the notary "in the transaction involving the Mortgage executed by Christopher G. Kermeen and Kimberly L. Kermeen" in favor of First Residential Mortgage - Louisville. She averred that she notarized the Mortgage and "administered the oath" to the Kermeens, and that her signature appears in the notary clause. According to Blankenship, Kimberly's "name was inadvertently omitted from the acknowledgment clause of the Mortgage as a result of a scrivener's error and mutual mistake," and the Mortgage indicates that Christopher is "the only individual designated as mortgagor." Blankenship averred, it "is my belief that the parties intended that the Mortgage would encumber both" Christopher's and Kimberly's "entire, undivided fee simple interest in the Property." Finally, according to Blankenship, Kimberly "was aware that she held an undivided one-half (½) interest in the Property and it was the intent of Kimberly L. Kermeen to sign the Mortgage to encumber her entire undivided fee simple interest in the Property."

{¶ 20} On January 3, 2011, and again on January 10, 2011, Final Judicial Reports as well as Affidavits of Status of Account and Military Affidavits were filed.

{¶ 21} On January 25, 2011, CitiMortgage filed a supplemental affidavit of Cindy Schneider, attached to which are multiple exhibits, including a copy of the payment history of the loan. Also attached is a Loan Modification Agreement, effective March 1, 2004,

"between Christopher G. Kermeen ('Borrower') and ABN AMRO Mortgage Group ('Lender')." The Loan Modification Agreement is signed and acknowledged by Christopher, and signed by Vickie Lester, Vice President of ABN AMRO Mortgage Group. A Modification Due on Transfer Rider is attached to the Loan Modification Agreement, and it is signed by Christopher, who is identified as "('the Borrower')." A "1-4 Family Modification Agreement Rider Assignment of Rents" is also attached and signed by Christopher, who is again identified as "('the Borrower')."

{¶ 22} Christopher and Kimberly did not respond to the motions.

{¶ 23} On January 31, 2011, the trial court issued a Decision and Judgment Entry, which provides that the matter came before the court for trial, and that both Kermeens failed to appear. The Entry states, "[a]s has been the Court's practice, the Court decided to hear testimony to determine the quality of the lending practices of various Plaintiffs in foreclosure cases, including this Plaintiff, in order to ensure that proper record keeping and proof is a part of the practice of this Plaintiff - and other lenders on this Court's docket." The court noted that it granted CitiMortgage a continuance of the initial trial date for discovery purposes, and it reviewed the "various reasons" it denied CitiMortgage's motion for default judgment, namely its preference to adjudicate cases on their merits and "lack of satisfaction with the affidavit in support of the motion." According to the trial court, CitiMortgage "is not entitled to a default judgment merely because the Defendants fail to appear or to answer," and it noted that "the presentation of evidence can be requested by the Court, based on Civ.R. 55." The court further noted "the mistaken impression that foreclosure Plaintiffs - or other creditors asserting collection rights - are entitled to invoke the authority and

imprimatur of the civil justice system without first establishing the validity of their claims is an unfortunate misunderstanding. Maybe courts have historically been willing to defer to claimants and to not assert the court's responsibility to require claimants to meet their burden of proof. Maybe an ill gotten attitude of entitlement exists among the creditors and their counsel. Burgeoning caseloads and time constraints on courts make this regrettably understandable. However, when called upon to produce evidence at trial, Plaintiffs and their counsel who misunderstand the burden of proof do so at their own peril."

{¶ 24} The court then noted that it considered the pleadings, affidavits and attachments, and that those documents "become the evidence of the terms, conditions and fulfillment of * * * the loan." The court next noted that Christopher alone signed the promissory note in the amount of $70,000.00, to borrow that sum from First Residential Mortgage - Louisville, and Christopher's "failure to pay according to the terms of the note results in a finding * * * that Plaintiff is entitled to a judgment" against Christopher in the amount of $79,686.13 plus interest at the rate of 6.25% from April 1, 2009, plus past and future advances under the note. Since Kimberly did not sign the Note, the court did not grant a monetary judgment against her.

{¶ 25} Regarding the Mortgage, the court noted that it was apparently "modified at the closing with the addition of a signature line and handwritten notation that Kimberly * * * was also signing the mortgage." The court further noted that the notary acknowledgment was not modified to reflect the additional signature.

{¶ 26} Regarding the Preliminary Judicial Report, the court noted that it indicates that the Kermeens "took title to the real estate in April, 1991 with each owning an undivided

one-half interest. This information was available to the loan originator and original lender at the time of closing."

{¶ 27} To determine CitiMortgage's request to reform the mortgage, the court applied general contract principles and determined that the plain language of the Note and Mortgage "consistently indicate an intention for Christopher G. Kermeen alone to be obligated for the indebtedness. When the note was modified in September, 2008 (sic), again Kimberly L. Kermeen was not involved in the transaction. The loan modification agreement was prepared by the lender even though it was aware of the joint ownership of the realty." Since there was "no internal inconsistency within the transaction," the court concluded that the contract documents are not ambiguous.

{¶ 28} In the absence of ambiguity, the court declined to admit the affidavits CitiMortgage submitted in support of summary judgment, as well as the unanswered requests for admission that CitiMortgage sought to have the court deem admitted. According to the court, the documents "clearly speak for themselves; affidavits and requests for admissions violate the parole evidence rule." "Anecdotally," the court further found CitiMortgage's affidavits "to be unpersuasive and self-serving; the affidavits purport to state intentions at the time of the loan over eight (8) years later. Finally, if inadvertence was involved, it was consistent inadvertence over numerous documents and over six years, which time included an agreed loan modification." In a footnote, the court indicated that "consistent inadvertence" may "actually be an oxymoron."

{¶ 29} Further, the court indicated that an "equally plausible explanation for individual indebtedness," in addition to the documents themselves, is that Kimberly "was

not willing to incur further debt nor pledge her half of the collateral as security for her husband's loan." The court found no error on Kimberly's part "nor any misrepresentation about the joint status of the parties' ownership of the realty." It further noted that no explanation had been provided for the eight year delay, from 2002 - 2010, "in seeking to correct the error."

{¶ 30} Finally, the court determined that since Kimberly was not a grantor of the mortgage, "her signature indicates a pledge of her dower interest in the real estate. In this case, when she signed the mortgage to release her dower interest, she agreed to release any interest she held in her husband's interest in the realty. The effect is that First Residential Mortgage - Louisville only took a one-half interest in the realty as collateral for the loan." According to the court, "to rule otherwise would elevate business practices and unspoken intentions over the integrity and certainty of the written documents." The court determined that the request for reformation of the Mortgage "is not justified under the facts as presented."

{¶ 31} The court granted judgment in favor of CitiMortgage against Christopher in the amount of $79,686.13, plus interest at the rate of 6.25% from April 1, 2009, plus past and future advances under the Note, and it determined that CitiMortgage was entitled to a decree in foreclosure and order of sale. Finally, it determined that one-half of the gross proceeds from the sale accrued to Kimberly for distribution following confirmation of the sale.

{¶ 32} CitiMortgage asserts five assignments of error. CitiMortgage's first assigned error is as follows:

"THE TRIAL COURT ERRED IN FAILING TO GRANT CITIMORTGAGE DEFAULT JUDGMENT WHEN APPELLEES WERE PROPERLY SERVED WITH THE COMPLAINT AND FAILED TO RESPOND TO THE ALLEGATIONS IN THE COMPLAINT."

**{¶ 33}** Our standard of review for this assignment of error is abuse of discretion. *Comunale v. Harrison*, 2d Dist. No. 20804, 2005-Ohio-4730, ¶ 6. As the Supreme Court of Ohio as previously determined

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶ 34}** Default judgments are employed where findings by the court regarding matters at issue may be determined by the pleadings alone. "Civ. R. 55(A) provides that default judgment may be awarded when a defendant fails to make an appearance by filing an answer or otherwise defending an action. (Citation omitted). However, it is 'a basic tenet

of Ohio jurisprudence that cases should be decided on their merits.' (Citation omitted)." *Lykins v. Miami Valley Hospital*, 157 Ohio App.3d 291, 2004-Ohio-2732, 811 N.E.2d 124, ¶ 92 (2d Dist.). Civ.R. 55(A) provides

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties.

{¶ 35} "Clearly, Civ.R. 55(A) makes it discretionary with the trial court to decide if a hearing is necessary. It has always been within the discretion of the trial court to determine whether further evidence is required to support a claim against a defaulting defendant. See *Dallas v. Ferneau* (1874), 25 Ohio St. 635 (further citation omitted)." *Buckeye Supply Co. v. Northeast Drilling Co.,* 24 Ohio App.3d 134, 136, 493 N.E.2d 964 (9th Dist. 1985). "If the court hears evidence, 'it follows that the court should make its decision conform to the law as applicable to the facts proven, and if no cause of action is shown no default judgment in plaintiff's favor should be rendered.' *Streeton v. Roehm* (1948), 83 Ohio App. 148, 81 N.E.2d 133." *Regency Centre Dev. Co., Ltd. v. Constr. Dimensions, Inc.,* 8th Dist. No. 81171, 2003-Ohio-5067, ¶ 15.

{¶ 36} In accord with Ohio jurisprudence, the trial court made clear its preference to decide matters on their merits, and it set this matter for trial to establish, by evidence, the truth of the averments in CitiMortgage's Complaint. Since it was within the trial court's

discretion to set the matter for trial, we cannot conclude, as CitiMortgage asserts, that it was entitled to a default judgment against the Kermeens solely on the basis that the defendants failed to appear and defend. Since an abuse of discretion is not shown, CitiMortgage's first assigned error is overruled.

{¶ 37} We will next address CitiMortgage's second and fourth assigned errors, which are as follows:

"THE TRIAL COURT ERRED IN FAILING TO DEEM THE AVERMENTS IN THE COMPLAINT ADMITTED BECAUSE APPELLEES ADMITTED THAT CITIMORTGAGE IS ENTITLED TO JUDGMENT."

And,

"THE TRIAL COURT ERRED IN FINDING THAT CITIMORTGAGE WAS NOT ENTITLED TO REFORMATION.

"1.     THE TRIAL COURT ERRED IN FINDING THAT CITIMORTGAGE'S REQUEST FOR REFORMATION WAS NOT JUSTIFIED BECAUSE THE MORTGAGE WAS UNAMBIGUOUS.

"2.     CITIMORTGAGE DEMONSTRATED THROUGH UNDISPUTED PROPER RULE 56(c) EVIDENCE THAT IT IS ENTITLED TO REFORMATION OF THE MORTGAGE."

{¶ 38} CitiMortgage asserts that Kimberly's name was inadvertently omitted from the granting clause and the acknowledgment clause of the Mortgage due to scrivener's error and mutual mistake, and that it is entitled to reform the Mortgage.

{¶ 39} We initially note that this Court reviews mortgages under general principles

of contract law, and we presume that the parties' intent "'resides in the language they have chosen to employ in the agreement.'" *SFJV 2005, L.L.C. v. Ream,* 187 Ohio App.3d 715, 2010-Ohio-1615, 933 N.E.2d 819, ¶ 22 (2d Dist.), citing in part *Fountain Skin Care v. Hernandez*, 175 Ohio App.3d 93, 2008-Ohio-489, 885 N.E.2d 286, ¶ 22 (2d Dist.). "'If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined.' *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.* (1984), 15 Ohio St.3d 321, 322, 15 OBR 448, 474 N.E.2d 271." Id. In such a case, "a court may not go beyond the plain language of the agreement to determine the parties' rights and obligations, and it may not consider parole evidence of the parties' intentions. (Citations omitted)." Id. The court, instead, "must give effect to the express terms of the contract." Id.

**{¶ 40}** However, "'if a term cannot be determined from the four corners of a contract, factual determination of intent or reasonableness may be necessary to supply the missing term.' (Citation omitted)." Id., at ¶ 23. In the event an ambiguity exists in a contract,

> "then it is proper for a court to consider 'extrinsic evidence,' i.e., evidence outside the four corners of the contract, in determining the parties' intent. *Blosser v. Carter* (1990), 67 Ohio App.3d 215, 219, 586 N.E.2d 253. Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement. Id."

(Citations omitted). Id.

{¶ 41} We review a trial court's interpretation of a contract de novo. *Ignazio v. Clear Channel Broadcasting, Inc.* 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 19. *Ream*, ¶ 24.

**{¶ 42}** Regarding the omission of Kimberly's name in the granting clause, we note that in *Ream* this court affirmed a judgment which determined that the mortgage therein was unambiguous and fully secured both the wife's and husband's interest in the property at issue, where both of them signed the mortgage, but only the wife executed the note, and only the wife was named in the granting clause and identified as the borrower and mortgagor.

**{¶ 43}** Paragraph 12 of the mortgage in *Ream* contained similar language to that of paragraph 13 of the Mortgage herein as follows:

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent. *Ream*, ¶ 27.

**{¶ 44}** This Court found nothing ambiguous about the *Ream* mortgage, determining,

> * * * The first page states that Donna Ream, the borrower, owes the lender a debt of approximately $64,000, which was evidenced by a note due and payable on May 1, 2034. These statements are followed by terms that provide that the "borrower" mortgages the property * * * as security for repayment of that debt. Paul initialed each page of the mortgage and signed the signature page on a line labeled "borrower."
>
> Although Paul Ream is not listed as a borrower/mortgagor on the first page of the mortgage, paragraph 12 of the mortgage makes clear that a "borrower" who signs the mortgage instrument but does not execute the note mortgages his interest in the property without assuming liability for repayment of the debt; Paul signed as a "borrower." There is no mention in the mortgage about the release of dower rights, nor is there any provision that suggests that Paul Ream signed the mortgage for a purpose other than to mortgage his interest in this property. Id., ¶ 30-31.

**{¶ 45}** Pursuant to *Ream*, we conclude that despite the omission of Kimberly's name from the granting clause in the Mortgage, pursuant to the co-signer provision, Kimberly signed the Mortgage for the purpose of mortgaging her interest in the property. Furthermore, her intent to do so is deemed admitted pursuant to Civ.R. 8(D), which provides, "[a]verments in a pleading to which a responsive pleading is required, * * * are admitted when not denied in the responsive pleading."

{¶ 46} Regarding the acknowledgment clause in the Mortgage, R.C. 5301.01 provides

A deed, mortgage, land contract * * * or lease of any interest in real property * * * shall be signed by the grantor, mortgagor, vendor, or lessor in the case of a deed, mortgage, land contract, or lease * * * . The signing shall be acknowledged by the grantor, mortgagor, vendor, or lessor * * * before a * * * notary public * * *, who shall certify the acknowledgment and subscribe the official's name to the certificate or the acknowledgment.

{¶ 47} R.C. 147.53 provides

The person taking an acknowledgment shall certify that:

(A) the person acknowledging appeared before him and he executed the instrument;

(B) The person acknowledging was known to the person taking the acknowledgment, or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.

{¶ 48} While Kimberly's name is absent from the acknowledgment clause, and the Mortgage was accordingly improperly acknowledged, "the Ohio Supreme Court has long held that '[a] defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud.' *Citizen's National Bank v. Denison* (1956), 1165 Ohio St.89, 95, 133 N.E.2d 329." *Texas Commerce Bank National Association v. Joseph*, 8th Dist. Cuyahoga No. 81097, 2003-Ohio-995, ¶ 20; see also *Seabrooke v. Garcia*, 7 Ohio

App.3d 167, 169, 454 N.E.2d 961 (9th Dist. 1982), citing *Denison* and noting the "reasoning behind such a rule is to bind the parties to that which they intended. The purpose of the acknowledgment statute (R.C. 5301.01) is to provide evidence of execution and authority for recordation. It is not to provide a way of escape for a party who later wishes to renege on his agreement.")

{¶ 49} Since both Christopher's and Kimberly's intent to convey the entire fee simple interest in the property is clear by the express terms of the Mortgage, as well as admitted facts, we conclude that the Mortgage fully secured Kimberly's interest in the property.

{¶ 50} CitiMortgage's remaining assignments of error are as follows:

"THE TRIAL COURT ERRED IN RAISING UNPLEAD DEFENSES FOR APPELLEES WHEN APPELLEES FAILED TO DO SO."

And,

"THE TRIAL COURT ERRED IN ORDERING THAT APPELLEE KIMBERLY KERMEEN IS ENTITLED TO ONE HALF OF THE GROSS SALES PROCEEDS."

{¶ 51} Given our conclusion that the trial court acted within its discretion, consistent with Ohio jurisprudence, to set the matter for trial and review the documents at issue, and having conducted de novo review of the trial court's interpretation of the Mortgage at issue, and further having concluded that the Mortgage encompasses the entire fee simple interest of the property, these assignments of error are necessarily sustained as well.

{¶ 52} Reversed and remanded for the trial court to enter judgment in foreclosure

against Kimberly as well to the extent of her full interest.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Michael J. Sikora III
Richard T. Craven
Scott D. Rudnick
Nathan D. Hosek
Hon. Jonathan P. Hein