[Cite as *U.S. Bank N.A. v. Stocks*, 2017-Ohio-8108.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| U.S. BANK N.A. | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27400 |
| | : | |
| v. | : | T.C. NO. 12-CV-3621 |
| | : | |
| ELEANOR L. STOCKS, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___6th__ day of _____October_____, 2017.

· · · · · · · · · ·

DAVID A. WALLACE, Atty. Reg. No. 0031356 and KAREN M. CADIEUX, Atty. Reg. No. 0079240, 280 Plaza, Suite 1300, 280 North High Street, Columbus, Ohio 43215
　　　Attorneys for Plaintiff-Appellee

RICHARD A. BOUCHER, Atty. Reg. No. 0033614 and JULIA C. KOLBER, Atty. Reg. No. 0078855, 12 W. Monument Avenue, Suite 200, Dayton, Ohio 45402
　　　Attorneys for Defendants-Appellants

· · · · · · · · · · · ·

DONOVAN, J.

**{¶ 1}** This matter is before the Court on the January 5, 2017 Notice of Appeal of Eleanor Stocks and James Stocks. The Stockses appeal from the trial court's December 16, 2016 "Second Amended Judgment Entry and Decree in Foreclosure." We hereby affirm the judgment of the trial court.

**{¶ 2}** On May 18, 2012, U.S. Bank National Association as Trustee Successor in Interest to Bank of America, National Association as Trustee as successor by merger to LaSalle Bank NA as Trustee for Washington Mutual Asset Backed Certificates WMABS Series 2007-HE2 Trust ("U.S. Bank") filed a "Complaint for Foreclosure" against the Stockses, Heartland Federal Credit Union, The United States of America – Department of the Treasury, the State of Ohio Department of Taxation, and the Montgomery County Treasurer. The complaint provides in part as follows:

1. Eleanor L. Stocks executed the promissory note * * * that is the subject of this action. See the attached exhibit.

2. Attached hereto as an exhibit is a copy of the mortgage * * * that was validly executed in connection with the execution of the Note. The parties to the Mortgage intended that it attach to the entire fee simple interest in the property.

3. The Mortgage was filed October 19, 2006, recorded at Official Number 06-097890, Recorder's Office, Montgomery County, Ohio.

4. The Mortgage is a lien on the property * * * described more fully in the attached Mortgage.

5. The Note and Mortgage are in default. Plaintiff has satisfied all conditions precedent and has declared the entire balance due and payable.

* * *

7. Plaintiff is due upon the Note principal in the amount of $344,641.83, plus interest on the outstanding principal balance at the variable rate as set forth in the Note from August 1, 2011, plus late charges

and advances and expenses incurred for the enforcement of the Note and Mortgage * * *.

8. Plaintiff is a person entitled to enforce the Note, pursuant to Section 1303.31 of the Ohio Revised Code, and the Mortgage was given to secure the Note.

* * *

10. The Mortgage is a valid and subsisting lien on the Property, subject only to any lien that may be held by the County Treasurer that has priority over the Mortgage as a matter of law.

* * *

{¶ 3} Attached to the Complaint is a copy of an "Adjustable Rate Promissory Note," dated October 13, 2006, which lists Eleanor Stocks as the borrower and The CIT Group/Consumer Finance, Inc. ("The CIT Group") as the lender, with a principal balance of $365,000.00. The Note provides that the loan is secured by a Mortgage on real property located at 4755 Fawnwood Road in Dayton. An undated Allonge is attached to the Note with an endorsement in blank that is signed by Frank Lenartowicz, the assistant vice president of The CIT Group. The October 13, 2006 Mortgage, reflecting a principal balance of $365,000.00, and identifying the Fawnwood Road property, is also attached to the Complaint. Eleanor Stocks and James Stocks are listed as the Mortgagors, and The CIT Group is listed as the Lender. MERS is listed as the Mortgagee, and the Mortgage provides that "MERS is acting solely as a nominee for Lender and Lender's successors and assigns." The Mortgage reflects that it was recorded as provided in the Complaint. The signatures of Eleanor and James appear on the Mortgage. The

Mortgage provides in part:

* * *

TAXES – LIENS – INSURANCE – MAINTENANCE – I will pay, when they are due and payable, all taxes, liens, assessments, obligations, water rates and any other charges against the Premises, whether superior or inferior to the lien of the Mortgage, maintain hazard insurance on the Premises in your favor in a form and amount satisfactory to you and maintain and keep the Premises in good repair at all times during the term of this Mortgage. You may pay any such tax, lien, assessment, obligation, water rates, premium or other charges (including charges to repair the Premises) or purchase such insurance in your own name, if I fail to do so. The amount you pay will be due and payable to you on demand, will bear interest at the interest rate in effect from time to time as provided in the Note secured by this Mortgage if permitted by law or, if not, at the highest lawful interest rate, will be an additional lien on the Premises and may be enforced and collected in the same manner as the other obligations secured by this Mortgage. * * *

{¶ 4} The acknowledgement clause on the Mortgage provides: "Before me, a notary public in and for the above County, personally appeared the above named MORTGAGORS, who acknowledged that (he-she-they) did sign the foregoing instrument, and that the same is (his-her-their) free act and deed."

{¶ 5} An "Adjustable Rate Rider," dated October 13, 2006, is attached to the Mortgage, and the signature of Eleanor appears thereon as Borrower, and the signature

of James appears thereon as "Non-obligor spouse/Owner." A legal description of the Fawnwood property is also attached to the Complaint, as is a notarized "Corrective Assignment," dated May 9, 2012, which provides that Mortgage Electronic Registration Systems, Inc., as nominee for The CIT Group, assigns the Mortgage to U.S. Bank. Finally, a Preliminary Judicial Report is attached to the Complaint.

{¶ 6} The Final Judicial Report was filed on June 22, 2012[1], and the Stockses filed an Answer on July 11, 2012. The Answer provides in part that "Defendants admit the allegations contained in Paragraphs numbered 1, 2, 3, and 10 of Plaintiff's Complaint."

{¶ 7} On February 19, 2013, U.S. Bank filed its motion for summary judgment. The motion provides that the "loan at issue was originally a non-escrow loan per the terms of the Note and Mortgage," and that as such, the Stockses "were required to pay their own insurance and taxes on the property." The motion further provides that the loan "remained a non-escrow loan until March 2008, when JPMorgan Chase Bank, National Association ('Chase'), the servicing agent on this loan for Plaintiff, * * * paid the delinquent taxes on the property in the amount of $8[,]442.96." According to U.S. Bank, this "payment was necessary due to Defendants' failure to pay the property taxes as agreed in the Mortgage." The motion provides that the terms of the Mortgage required the Stockses to "repay any such advances."

{¶ 8} The motion further provides that on or about August 18, 2011, the Stockses

---

[1] The report reflects that the Mortgage was initially assigned to U.S. Bank by assignment filed March 26, 2012, recorded at Official Instrument Number 2012-00018247, Recorder's Office, Montgomery County, and subsequently assigned to U.S. Bank by "Corrective Assignment" filed May 17, 2012, recorded at Official Instrument Number 2012-00031021, Recorder's Office, Montgomery County. We note that the address of U.S. Bank was changed in the "Corrective Assignment."

"submitted a payment which was to have been applied to the principal and interest for August 2011 and would have rendered the loan due for September 1, 2011." U.S. Bank asserted that the "check for the August 2011 payment was refused * * * for insufficient funds and the account remained due for the August 2011 payment." U.S. Bank asserted that an Escrow Account Statement was sent to the Stockses on August 5, 2011, showing an escrow shortage of $11,661.65. The motion provides that "Chase offered Defendants two options to cure their delinquency," namely to pay $11,661.65 "followed by regular monthly payments of $2,808.68, effective September 1, 2011," or pay the $11,661.65 shortage over a twelve-month period with a monthly payment of $3,780.48.

{¶ 9} The motion provides that on September 15, 2011, a payment was received in the amount of $2,212.17, which was insufficient and placed into a "suspense account." According to the motion, on October 17, 2011, a payment of $2,213.17 was received, which was combined with the amount in the suspense account, making the account current for August 2011 and due and owing for September 2011. The motion provides that a payment of $2,808.68 was received on November 21, 2011. According to the motion, since the Stockses had not paid the entire amount of $11,661.65, the amount received was not sufficient to cover the monthly payment amount of $3,780.48. The motion provides that the amount was placed into the "suspense account," rendering the loan due and owing for September 1, 2011. The motion provides that no further payments on the loan have been received.

{¶ 10} U.S. Bank asserted that it sent the Stockses "notice of their default and an opportunity to cure, as required by the terms of the Note and Mortgage, on October 31, 2011. Defendants did not cure the default and the loan was accelerated." U.S. Bank

asserted that in their Answer, the Stockses admitted that "Eleanor Stocks signed the Note, both Defendants signed the Mortgage, and that the Mortgage is a properly recorded first lien on the Property."

{¶ 11} U.S. Bank asserted the Note, endorsed in blank, is in its possession and that it is entitled to enforce it. U.S. Bank further asserted that it is the real party in interest as the holder of the Note and assignee of the Mortgage, with standing to bring the action against the Stockses. U.S. Bank argued that the Mortgage was validly recorded on October 19, 2006. According to U.S. Bank, by virtue of the default on the Note, it is entitled to foreclose the property delivered as security under the Mortgage.

{¶ 12} Attached to the motion is the affidavit of Candace Reichardt, which provides that she is "authorized to execute this affidavit on behalf of JPMorgan Chase Bank, National Association ('Chase'), the loan servicer for the above referenced Plaintiff." The affidavit provides that Eleanor is the borrower on the Note. According to Reichardt, in her capacity as "Vice President," she has "access to Chase's business records, maintained in the ordinary course of regularly conducted business activity, including the business records for and relating to the Borrower's loan. These records include the historic records of Chase Home Finance LLC, which merged with Chase effective May 1, 2011." Reichardt's affidavit provides that her averments are "based upon my review of those records relating to Borrower's loan and from my own personal knowledge of how they are kept and maintained. The loan records for the Borrower are maintained by Chase in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge."

{¶ 13} Reichardt averred that the records she reviewed and relied upon include

the "Note, Mortgage, the Assignment of Mortgage and Chase's electronic servicing system, including the payment history and the Breach Letter" that was issued to the Stockses on October 31, 2011, "true and exact copies" of which are attached as exhibits to the affidavit. The following text, followed by Reichardt's initials, is handwritten on the affidavit: "Plaintiff, directly or through his agent is in possession of the original note and was in possession prior to and at the time of filing the complaint in this action." The remaining averments in the affidavit are consistent with the factual statements in the motion for summary judgment regarding the loan, the payment of delinquent taxes by Chase in March 2008, the payment made on the loan on August 18, 2011, the Escrow Account Statement sent to the Stockses on August 5, 2011, the options offered to them to bring the amount due current, and the payments of September 15, October 17, and November 21, 2011. The affidavit further provides that on January 23, 2012, "a tax disbursement was made in the amount of $3,420.67," and that on June 6, 2012, "a tax disbursement was made in the amount of $3,417.50." Reichardt averred that the "Borrower has defaulted under the terms of the Note and Mortgage. The Borrower's default on the Note and Mortgage has not been cured, and the loan balance has been accelerated in accordance with the terms of the loan documents, making the entire balance due and owing." Finally, Reichardt averred that as "a result of the Borrower's default, the Borrower owes, as of January 31, 2013, the principal of $344,641.83 plus interest at variable % per annum from 8/1/2011 plus advances for taxes, insurance, and otherwise to protect the property, if any."

{¶ 14} On April 23, 2013, the trial court issued a "Decision, Order and Entry Granting Plaintiff's Motion for Summary Judgment," noting that after two extensions of

time, the Stockses failed to oppose U.S. Bank's motion. On the same date, the court issued an "Entry Vacating Decision filed on April 23, 2013," noting that it was filed by the court in error.

{¶ 15} On May 3, 2013, the Stockses responded to the motion for summary judgment. According to the Stockses, "what Plaintiff has failed to reveal in its Motion for Summary Judgment is that Defendants had entered into a payment plan with the Montgomery County Treasurer's Office and were current in their obligation to same." The Stockses argued that U.S. Bank "failed to investigate the actual payment amount due when making a routine review of county tax information and instead issued a check to pay taxes and assessments in the approximate amount of $8,442.96." According to the Stockses, they "absolutely did not default under the terms of the Note." They argued that they "entered into a non-escrow loan with their original mortgagee, as such, they agreed to pay their own taxes and insurance on the property. In 2005, Defendants entered into an agreement with the Montgomery County Treasurer's Office to make payments on the amount due for taxes." The Stockses argued that after the amount of $8,442.96 in taxes was paid, U.S. Bank "immediately declared an 'escrow shortage' and demanded repayment by Defendants. Plaintiffs eventually began rejecting Defendants['] monthly mortgage payments, which they had never been behind on and then declared the loan in default." According to the Stockses, U.S. Bank caused their default.

{¶ 16} The Stockses further argued that "it has been the history of this Note and Mortgage that Plaintiff, or its predecessors, have frequently been the cause of 'default' with regard to Defendants' obligations thereunder." The Stockses argued that in "2007, within 30 days after the Note and Mortgage were transferred to Washington Mutual,

Washington Mutual incorrectly deemed Defendants behind in a monthly payment, causing late fees and numerous threatening harassing phone calls." The Stockses asserted that subsequently, "once Washington Mutual sold Defendants' Note and Mortgage to Plaintiff, Defendants set up automatic payment deductions allowing Plaintiff to deduct the monthly mortgage payment directly. * * * However, Plaintiff routinely failed to make a deduction until at least one or two days after the payments were due, causing Defendants' payments which they were in sole control of, to be late." Finally, the Stockses asserted that "despite the fact that Defendants have at all times maintained insurance on the property throughout the history of the loan, Plaintiff has continually and routinely obtained and paid for insurance on the property."

{¶ 17} Eleanor's attached affidavit provides that she "entered into a non-escrow loan and agreed to pay my own taxes and insurance on the subject property." Eleanor averred that in "August, 2005 my husband and I entered into a payment plan with the Montgomery County Treasurer's Office for the payment of real estate taxes." According to Eleanor, she "was always current in my payment obligations to the Montgomery County Treasurer's Office," and any "payment made by Plaintiff [to] the Montgomery County Treasurer's Office was absolutely unnecessary and caused our loan account to default." Eleanor further averred that after "Plaintiff made the above unnecessary payment, Plaintiff began rejecting my monthly mortgage payments." She averred that after the Note and Mortgage were transferred to Washington Mutual, Washington Mutual "incorrectly deemed me behind in a monthly payment." According to Eleanor, the matter was resolved in her favor. She averred that U.S. Bank, after automatic payment deductions were set up, "routinely failed to make a deduction" until after payments were due. Finally,

Eleanor averred that "Plaintiff has continually and routinely obtained and paid for insurance on the property despite the fact that we have at all times maintained insurance on the property."

{¶ 18} On June 20, 2013, U.S. Bank replied to the Stockses' response to the motion for summary judgment. U.S. Bank asserted in a footnote that the Stockses asserted "defenses and claims that have not been raised previously in this action," which U.S. Bank asserts "is disfavored." U.S. Bank argued that the Stockses supported their assertions that U.S. Bank caused them to default, routinely withdrew funds after they were due, and routinely paid for insurance unnecessarily "only with the affidavit of Eleanor Stocks, which is unequivocally self-serving, and which does not attach or incorporate any supporting documents, other evidence, or specific facts."

{¶ 19} U.S. Bank asserted that it established the Stockses' default with competent summary judgment evidence, namely the affidavit of Candace Reichardt, as well as "authenticated business records, including true and accurate copies of the payment history of the loan from January 2007 to July 2012, and correspondence sent to Defendants notifying them of their default and providing options for the repayment of their loan following the opening of the escrow account." According to U.S. Bank, the Stockses "have failed to establish a single triable issue of fact supported by evidence sufficient to avoid summary judgment." U.S. Bank argued that the Stockses "failed to provide any evidence or specific facts which would contradict that which has been established by Plaintiff." In a footnote, U.S. Bank argued that the Stockses, for example, "did not attach bank statements showing automatic withdraws initiated by Plaintiff, nor did they provide any dates on which these alleged withdraws occurred. * * * Defendants provide no

concrete evidence of dates, amounts, proof of their own insurance coverage, etc. to support their claim."

{¶ 20} U.S. Bank asserted that the mortgage provides that "if Defendants failed to pay [taxes, liens, insurance] as required, the lender is permitted to pay them on Borrower's behalf, and the amount the lender advances is due and payable by Borrowers on demand, together with interest." U.S. Bank argued that "the simple fact that Defendants failed to make payments for taxes when due, which Defendants admit by saying they were in a repayment plan with the Treasurer's office, entitled Plaintiff to pay these amounts on Defendants' behalf and collect the amount advanced from Defendants." According to U.S. Bank, it "had no duty to scour the County records or inquire with Defendants as to whether they were planning on fulfilling their tax obligations before taking action to protect its interest."

{¶ 21} U.S. Bank asserted that its "proffered evidence shows that a check submitted August 18, 2011 was refunded by the bank for insufficient funds. * * * If Plaintiff were authorized to automatically withdraw funds, no check would have been issued from Defendants' account, and consequently, no refunding to the bank would have occurred." U.S. Bank asserted that the "payment history also establishes that other payments were reversed for insufficient funds." U.S. Bank argued that it "did not *cause* Defendants' default as Defendants so allege; rather, Defendants' own failure to timely pay all contractual obligations, including property taxes, was the cause of their default." Finally, according to U.S. Bank, the "payment history shows that no payments were made on behalf of, or advances charged to Defendants, for any lender placed property insurance."

**{¶ 22}** Attached to the reply is the June 19, 2013 affidavit of Heather Craft, which provides that she is "authorized to execute this affidavit on behalf of JPMorgan Chase Bank, National Association ('Chase'), the loan servicer for the above referenced Plaintiff." The affidavit identifies Eleanor as the "Borrower" on the Note, and it provides that in her capacity as Vice President, Craft has "access to Chase's business records, maintained in the ordinary course of regularly conducted business activity, including the business records for and relating to the Borrower's loan. These include the historic records of Chase Home Finance LLC, which merged with Chase effective May, 2011." According to Craft, her affidavit is "based upon my review of those records relating to the Borrower's loan and from my own personal knowledge of how [they] are kept and maintained. The loan records for the Borrower are maintained by Chase in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge." Craft averred that she reviewed "Chase's electronic servicing system which includes the payment history," and that the "business records I reviewed do not reflect that Chase set up an automatic payment withdrawal for this loan." According to Craft, the records she reviewed "do not reflect that Chase automatically withdrew funds from an account to make the Borrower's required monthly payments." Finally, Craft averred that the records she reviewed, including the payment history, "do not reflect that Chase purchased property insurance on the Borrower's behalf or advanced funds to do so." The payment history is attached to the affidavit.

**{¶ 23}** On June 24, 2013, the Stockses filed a "Motion for Oral Argument" on the motion for summary judgment. With leave of court, on August 9, 2013, "Defendants'

Supplemental Response to Plaintiff's Motion for Summary Judgment" was filed. Therein the Stockses asserted that U.S. Bank "eliminated the possibility of Defendants staying current in their mortgage obligations by negligently placing Defendants in default and in extreme financial hardship." The Stockses argued that U.S. Bank negligently created false late charges resulting in a monthly fee of over $128.00. The Stockses argued as follows:

> In a letter sent December 11, 2006, CIT Group (predecessor in interest to Plaintiff) informed Defendants that they had sold the mortgage to Washington Mutual (also predecessor in interest to Plaintiff). Said letter is attached hereto as Exhibit A and incorporated herein. CIT Group also informed Defendant that the sale would be effective January 1, 2007. * * *In response to this letter, Defendant sent the payment via check for January of 2007 on January 8, 2007 to Washington Mutual as requested. A copy of said check is attached hereto as Exhibit B, and incorporated herein. Washington Mutual accepted said check and deposited it on January 11, 2007. Plaintiff alleges that Washington Mutual reversed the amount of said check on February 27, 2007 almost two months later. See Account ledger [a]ttached as Exhibit D to Plaintiff's Reply in Support of Motion for Summary Judgment filed herein on February 19, 2013. Washington Mutual never informed Defendants that the January 8, 2007 payment was reversed, and Defendants continued to make monthly payments.

> This allegedly unnecessary and unexplained act of Washington Mutual caused Defendants to be in default and continuously one month

behind on their mortgage over the course of several years, and resulted in a $128.23 dollar late fee every month. Defendants continuously paid said monthly late fees while constantly disputing the accuracy of the said late charges. These late fees escalated the already difficult financial situation of Defendant, and resulted in thousands of dollars in fees, the result of which resulted in [D]efendants['] default and extreme burden on their finances.

**{¶ 24}** The Stockses further argued that Plaintiff negligently paid property taxes in excess of what was due in 2008. The Stockses asserted as follows:

* * * At the end of 2007, Defendants were current in their taxes, and further, they had a credit of $303.29. See Montgomery County Tax Record attached hereto as Exhibit C, and incorporated herein. In March of 2008, just after the February 2008 Tax Bill was issued, Plaintiff paid the county over $8,442.96, when at most Defendants owed $3,228.16 (which was their current bi-annual tax obligation for which they had recently received an invoice). Defendants were current in their tax payments up to this point as they had entered into a Delinquent Tax Contract with the Montgomery County Treasurers [sic] office in 2005, prior to obtaining a mortgage from Plaintiff. Said Contract is attached hereto as Exhibit D, and incorporated herein. Defendants were able to pay and had planned to pay the bi-annual tax bill of $3[,]228.16, but by no means could they pay the erroneous obligation of $8,442.96. If not for Plaintiff's actions, Defendants would have continued to pay their tax obligation. Plaintiff continued to demand

full repayment of the $8,442.96 even though the tax bill was only $3[,]228.16 at the time of the payment.   Further, on July 15, 2008, Plaintiff paid another tax payment of $3,166.33, and again erroneously attempted to charge Defendant.   Plaintiff's tax payment error exacerbated the burden that Plaintiff had already created through erroneous late charges on the account as addressed * * * above.   The combination of these two factors eliminated the ability of Defendants to stay current on mortgage payments.

**{¶ 25}** Finally, the Stockses asserted that Riechardt "was not and has never been an employee or agent of CIT Group or Washington Mutual.   She has no personal knowledge of the facts and circumstances surrounding Defendant's relationship with CIT [G]roup or Washington Mutual because she is an agent of the Plaintiff."   According to the Stockses, "the assignment to Plaintiff from Washington Mutual did not take place until March 26, 2012."   The Stockses argued that reasonable minds could come to different conclusions as to which party caused the default on the Note.

**{¶ 26}** Attached to the supplemental response are copies of the following: December 11, 2006 correspondence to Eleanor, from the Customer Service Department at The CIT Group, providing that the mortgage loan has been transferred from THE CIT Group to Washington Mutual, effective January 1, 2007; a cancelled check, dated January 8, 2007, made out to Washington Mutual Bank, in the amount of $2,564.64, signed by E. Stocks; a Montgomery County Tax Summary for 4755 Fawnwood Road; a 2005 "Delinquent Tax Contract" to pay delinquent and unpaid current taxes in installments for the Fawnwood property; a "Payments Listing" that provides it is "FROM – Mont Co Treasurer," and print outs from the Montgomery County Treasurer's Office website for the

years 2009, 2008, and 2007.

{¶ 27} On August 21, 2013, U.S. Bank filed a "Motion to Strike Defendants' Exhibits." Therein, U.S. Bank argued that the above exhibits are not competent summary judgment evidence pursuant to Civ.R. 56(C), and that they further "must be stricken as inadmissible hearsay." According to U.S. Bank, the Stockses failed to file an affidavit to authenticate the exhibits.

{¶ 28} On October 14, 2013, "Plaintiff's Supplemental Brief in Support of Motion for Summary Judgment" was filed. Attached to the brief is the affidavit of Angela Kirk, which provides that she is an attorney employed by Manley Deas Kochalski ("MDK") representing U.S. Bank. Kirk averred the "averments provided in this affidavit are within the scope of my duties," and that in her "position, I have access to business records maintained by MDK and I have personal knowledge of the operation of the circumstances surrounding the preparation, maintenance, and retrieval of records in MDK's record keeping system." Kirk averred that her affidavit is "based upon personal knowledge obtained from my own personal encounters and from personal review of the business records for the foreclosure which is the subject of this action." Kirk averred that on or about August 20, 2013, she "spoke, via telephone, to Kathy Floyd at the Montgomery County Treasurer's Office regarding the property tax history of 4755 Fawnwood Road * * * ." Kirk averred that she "learned of two Delinquent Tax Plans which were entered into by Eleanor Stocks and the Treasurer's Office." According to Kirk, she obtained copies via fax of the Delinquent Tax Plans as well as "tax bills that would have been sent regarding the delinquent tax status in early 2008." The entirety of the fax is attached to Kirk's affidavit, according to Kirk. Kirk averred that she further obtained certified copies of

the voided 2005 and 2007 Delinquent Tax Plans, which she stated are also attached to her affidavit. Kirk averred that she obtained, on August 22, 2013, from the Montgomery County Treasurer's Office, "copies of the checks received in 2008 and used to pay the amount past due," written by Washington Mutual. The two copies are attached to her affidavit, in a total amount of $8,442.96.

{¶ 29} Also attached to the supplemental brief is the affidavit of Vicky Hall, Vice President of Chase. Hall averred that she is authorized to make the affidavit and that the affidavit is "based upon my review of Chase's records relating to the Borrower's loan, including copies of the Note and Mortgage, and records from Chase's electronic servicing system, MSP, and from my own personal knowledge of how such records are kept and maintained." Hall averred that she "personally verified the accuracy of the factual information in this Affidavit based on my review of Chase's business records. The loan records for [Eleanor Stocks] are maintained by Chase in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge." Hall averred that U.S. Bank, "directly or through its agent, is in the possession of the original Note and was in possession prior to and at the time of filling the Complaint in this action," and that the Note is endorsed in blank. She averred that Eleanor "failed to make the payment that was due for 09/01/2011 under the Loan Documents," and that "Borrower has not subsequently made payments to bring the loan current, and the entire loan balance is now due and owing to Plaintiff." According to Hall, as of September 30, 2013, U.S. Bank seeks the principal balance of $344,641.83, plus interest from August 1, 2011 through August 31, 2013, in the amount of $44,095.72, for a total of $383,616.51, plus attorney fees, costs

and expenses. Attached to the affidavit is a copy of a September 25, 2008 "Purchase and Assumption Agreement" between Chase and Washington Mutual, two Washington Mutual checks dated March 13, 2008 to the Montgomery County Treasurer, the Note, the Mortgage, the legal description of the property, the "Corrective Assignment," the payment history, the October 31, 2011 "Notice of Intent to Foreclose," and the August 5, 2011 "Annual Escrow Account Statement."

{¶ 30} On October 25, 2013, the "Cross-Claim of Defendant, Heartland Federal Credit Union" was filed.

{¶ 31} On November 27, 2013, "Defendants' Response to Plaintiff's Supplemental Brief in Support of Motion for Summary Judgment" was filed. Therein, the Stockses asserted that U.S. Bank caused their default, that U.S. Bank's affidavits were "impermissible evidence," that the Mortgage is defective, and that they are victims of predatory lending. The Stockses asserted that their 2006 loan application attached to the response contains "mistakes and flaws * * * lending credence to the defense of predatory lending." According to the Stockses, the loan application provides that it was completed jointly but only Eleanor's income information was utilized. They asserted that the application indicates that it was to refinance a 1993 loan, when in fact the first mortgage for the property was obtained in 1999. The Stockses argued that "the market value of the property was listed on the Loan Application as $483,500.00. That market value is clearly inflated and as such is a [telltale] sign of predatory lending." According to the Stockses, the Montgomery County property records from 2006 reflect that the "tax appraised value of the property was $324,260.00." According to the Stockses, "the draftor [sic] of the Loan Application failed to include all of the Defendant, Eleanor Stocks'

liabilities when determining loan eligibility and clearly failed to undertake due diligence in insuring the accuracy of the information it was submitting." The Stockses asserted that THE CIT Group "was known for its significant presence in the subprime mortgage market at the time of Defendants' loan. It was ultimately forced to file bankruptcy due to this fact."

{¶ 32} The Stockses argued that "reasonable minds could come to different conclusions as to whether Plaintiff's affiant is entitled to swear to facts she has no knowledge of, whether Plaintiff caused default, whether either Defendant was a victim of predatory lending practices and whether the mortgage is valid." Eleanor's attached affidavit provides, in addition to the averments in her initial affidavit, that "[w]e believe that we have been the victims of predatory lending practices."  According to Eleanor, "[a]ll of the documents referenced in and attached as Exhibits to Defendants' Response to Plaintiff's Supplemental Brief in Support of Motion for Summary Judgment, are true and accurate copies of documents that I have either drafted, received or reviewed during the course of my loan with Plaintiff and its predecessors and/or during the course of these proceedings."

{¶ 33} The following ten exhibits, which appear to be addressed to the Stockses' assertion regarding predatory lending, are attached to the response: 1) a copy of a document from the Montgomery County Auditor's Office reflecting that Key Bank obtained a judgment against Kevin Stocks, and that upon his default, Eleanor purchased the Fawnwood property at Sheriff's sale in May 1999 for $239,000.00; 2) a copy of the Note; 3) a copy of the Mortgage; 4) Eleanor's affidavit; 5) August 2, 2012 correspondence to James and Eleanor from the Underwriting Department of State Farm Fire and Casualty Company ("State Farm"), which provides that the Fawnwood property has been insured

with State Farm since July 18, 2003 to July 18, 2013 and remains in good standing; 6) August 20, 2008 correspondence from "WaMu" to Eleanor which provides in part that " * * * we determined that the payment in question, check number 2009 in the amount of $2,5564.64, was posted on 01/12/2007. This payment was applied as your February 2007 payment. Our records indicate that your account is currently due for the August 2008 payment."; 7) June 6, 2011 correspondence from Chase Home Lending to Eleanor which provides in part that Chase "paid a hazard insurance premium necessary to provide coverage on your Property."; 8) a Uniform Residential Loan Application in Eleanor's name in the amount of $365,000 for the Fawnwood property; 9) a printout from the Montgomery County Treasurer's Office for the Fawnwood property from tax year 2006 reflecting a value of $324,260.00; and 10) printouts from the Montgomery County Clerk of Courts Public Records Online System showing the following: a certificate of judgment against Eleanor, dated April 3, 1992, in favor of Altick and Corwin, in the amount of 957.52; a certificate of judgment against Eleanor and "Coras and Coras," dated March 30, 1992, in favor of Attorney Jonathan Mason, in the amount of $277.80; a certificate of judgment against Eleanor and "Coras Salon and Gift Shop," dated September 29, 1993, in the amount of $8,068.10, in favor of Attorney John Slavens; a certificate of judgment against Eleanor and Kevin Stocks, dated July 25, 1997, in the amount of $60,159.27, in favor of Attorney Graham D. Guthrie; and a certificate of judgment against Eleanor, dated May 1, 1996, in the amount of $2,247.40, in favor of Attorney Frank J. Veneziano.

{¶ 34} On March 5, 2014, the trial court issued its "Decision, Order and Entry Granting Plaintiff's Motion for Summary Judgment; Granting Plaintiff's Motion to Strike," noting that the Stockses "did not submit any arguments in opposition" to U.S. Bank's

motion to strike. The court concluded, pursuant to Civ.R. 56(E) that the "documents attached to Defendants' *Supplemental Response to Plaintiff's Motion for Summary Judgment* are not certified copies and there has been no affidavit filed authenticating said documents. The Court will not consider the documents attached to Defendants' *Supplemental Response to Plaintiff's Motion for Summary Judgment* when ruling on the *Motion for Summary Judgment*." The court then noted that U.S. Bank "had standing to bring the within action at the time the *Complaint* was filed on May 18, 2012." The court concluded that "Ms. Reichardt's, Ms. Kirk's and Ms. Hall's affidavits meet the requirements enumerated in Ohio Civil Rule 56(E)."

**{¶ 35}** Regarding predatory lending, the court noted that the "loan amount listed on the note dated October 13, 2006 is $365,000.00. The document submitted by Defendants from the County Auditor's page for the tax year 2006 lists the total value of the property at $324,260.00." After noting Eleanor's averment that the Stockses "believe that we have been the victims of predatory lending practices," the court noted that "Defendants cite no cases in support of their arguments." Regarding the Stockses' assertion regarding THE CIT Group's presence in the subprime market and subsequent bankruptcy, the court found that "this assertion by Defendants does not constitute Ohio Civ.R. 56 evidence to create a dispute of fact." The court noted that the Stockses "have generically asserted that they are the victims of predatory lending, yet cite no case law or statutes to support this broad assertion." The court noted that the Stockses "do submit another affidavit from Ms. Stocks in support of this assertion, but the Court finds that Ms. Stocks' second affidavit is self-serving." According to the court, "some of the allegations are merely scriveners errors." The court concluded that it "does not find that Defendants

have shown a dispute of fact as to any alleged predatory lending."

{¶ 36} Regarding the Stockses' assertion that the mortgage is defective, the court noted that there "is no dispute that the Defendants executed the mortgage at issue. The Court finds that the acknowledgement substantially complied with the requirements of ORC 5301.01."

{¶ 37} Finally, regarding the default on the Note, the court concluded as follows:

The Court finds that Plaintiff, under the terms of the mortgage, was entitled to pay any taxes due on the property if Defendants failed to pay them. Further, there is no dispute that Defendants owed taxes on the property. Stocks' affidavit establishes that a payment plan was entered into to pay the delinquent taxes. Therefore, under the terms of the mortgage, Plaintiff could pay the delinquent taxes. Defendants' arguments that Plaintiff paid the taxes that were not due is not supported by the evidence and does not create a dispute of material fact. The evidence submitted does not create a dispute of fact that Defendants defaulted on their payments. Mrs. Stocks' assertion that there were erroneous late fees charged on the account is not supported by the evidence presented.

{¶ 38} On March 21, 2014, the court issued a judgment entry and decree of foreclosure, and on March 25, 2014, an order of sale was filed and issued to the sheriff. On April 10, 2014, the Stockses filed a Notice of Appeal, and on March 2, 2015, the parties filed a "Mutual Dismissal of Appeal," noting that the decision appealed from was not a final appealable order, since the decree in foreclosure did not address the cross-claim and did not include the amount and priority of three liens. Also on March 2, 2015, this

Court dismissed the appeal.

{¶ 39} On May 29, 2014, the trial court issued a "Decision, Order and Entry Granting Defendants' Motion for Stay." On June 10, 2016, the trial court issued an "Amended Judgment Entry and Decree in Foreclosure" to "reflect the dismissal of Defendant Heartland Federal Credit Union's crossclaim."

{¶ 40} On July 8, 2016, the Stockses filed a Notice of Appeal from the amended entry. On August 9, 2016, this Court issued a "Show Cause Order," noting that the amended entry did not determine the priority and amount of all the liens on the property. This Court ordered the Stockses to show cause as to why their appeal should not be dismissed for lack of a final appealable order. On September 29, 2016, this Court issued a "Decision and Final judgment Entry" dismissing the appeal, noting that "[w]e have no jurisdiction to review an order or judgment that is not final."

{¶ 41} On December 16, 2016, the trial court issued its "Second Amended Judgment Entry and Decree in Foreclosure." On January 5, 2017, the Stockses filed a motion for stay, which the trial court granted on January 11, 2017.

{¶ 42} The Stockses assert one assignment of error herein as follows:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON APPELLEE'S FORECLOSURE CLAIM.

{¶ 43} The Stockses' assigned error is addressed to two issues, namely "whether an affidavit from an employee of the current bank or loan holder and not those preceding holders and servicers is sufficient to support summary judgment," and "whether genuine issues of material fact exist as to the validity of the mortgage." According to the Stockses, "Appellee's Affidavits are insufficient to support summary judgment and the

documents attached to Appellee's Affidavits are impermissible as evidence." Regarding the Reichardt and Craft affidavits, the Stockses argue that they "were not based on personal knowledge and the affiants were not sufficiently familiar with the business operations of Appellee's numerous predecessors to testify as to the accuracy of the records used to support Appellee's *Motion for Summary Judgment.*"

**{¶ 44}** The Stockses assert that Reichardt "has no personal knowledge of the facts and circumstances surrounding Appellant's relationship with CIT Group or Washington Mutual because she is an agent of the Appellee and the assignment to Appellee from Washington Mutual did not take place until March 26, 2012." The Stockses further contend that while Craft avers that her affidavit is based on personal knowledge, "in fact she was not and has never been an employee or agent of the CIT Group or Washington Mutual." According to the Stockses, "Appellee's Affiants have no personal knowledge of the business records or record-keeping systems of the CIT Group or Washington Mutual. Further, the Affiants fail to allege within those Affidavits as to those record keeping practices."

**{¶ 45}** The Stockses argue as follows:

* * * One example of a blatant misrepresentation as to personal knowledge in the Affidavits occurs when Ms. Reichardt states in her Affidavit, paragraph 8, "The loan remained a non-escrow loan until March 2008, when Chase paid delinquent taxes on the property in the amount of $8442.96." Chase was not servicing Appellants' loan in March, 2008 and Ms. Reichardt certainly cannot testify as to something that happened months before Chase began servicing Appellants' loan without at least

testifying that she had reviewed the business records of the previous servicer. In fact, none of Plaintiff's three submitted affiants can testify as to that time period because Washington Mutual was servicing the loan at that time.

Further, in paragraph 8 of her Affidavit, Ms. Craft swears to the fact that "The business records I reviewed, including the payment history, do not reflect that Chase purchased property insurance on the Borrower's behalf or advanced funds to do so." That is a false statement. Chase mailed a letter to Appellant, Eleanor Stocks, on June 6, 2011 indicating that it paid a hazard insurance premium on the property at issue and demanded repayments of said premiums.

{¶ 46} Regarding the validity of the mortgage, the Stockses assert that James "was incorrectly listed as a mortgagor on page 1 and 3 of the mortgage. However, on the rider attached to the mortgage he is listed correctly as only the 'Non-Obligor Spouse/Owner.' " The Stockses further assert that "the notary acknowledgment contained on page 2 of the mortgage is incorrectly written." According to the Stockses, the "names of the Appellants have been omitted from the notary acknowledgement," and "the failure to notate the names of the Appellants in the mortgage herein is fatal to the document and as such the mortgage is invalid." They assert that "considering that the rider lists Appellant, James Stocks, only as a non-obligor and the mortgage itself as an obligor, there is no way to tell from a review of the rest of the documents who the 'Mortgagors' are referred to in the notary acknowledgment." The Stockses assert that "[m]ultiple decisions have found that mortgages with the name of the mortgagor missing

in the acknowledgment clause are invalid under Ohio law and are not saved by the doctrine of substantial compliance." The Stockses argue that the trial court "declared the notary block error as harmless but failed to address the fact that the mortgage incorrectly named Appellant, James Stock, as a mortgagee. And the trial court incorrectly alluded that the correct parties to the mortgage, although not named in the notary block, were ascertainable from the instrument itself." The Stockses assert that due "to the confusion on the mortgage itself as to who was the actual borrower, it was critical and necessary that the notary block identify the mortgagor by name."

{¶ 47} In response, U.S. Bank asserts that it "established all the elements of a foreclosure action, and the Stockses did not submit any Rule 56 material creating an issue of fact." According to U.S. Bank, the "affiants met the personal knowledge requirements for affidavits, and the trial court properly considered them." U.S. Bank asserts that each "affiant stated that she is employed by JPMorgan Chase and had access to JPMorgan Chase's business records, which were maintained in the ordinary course of its regular business activities." Further, according to U.S. Bank, each "affiant also stated that she had reviewed JPMorgan Chase's records and attached the records that had been reviewed, which included the Note, Mortgage, assignment of mortgage, payment history, breach letter, tax payment checks, and Purchase and Assumption Agreement, [and stated] that she knew how those business records are created and maintained." U.S. Bank argues that each "affiant further stated that the records were maintained by JPMorgan Chase in the ordinary course of its business and the records were made at or near the time of the event recorded, by or from information with a person with knowledge."

{¶ 48} U.S. Bank further asserted that "all of the documents attached to the

affidavits are admissible." According to U.S. Bank, "a simple review of the records attached to the affidavits of Reichardt, Craft, and Hall indicate most of them are JPMorgan Chase documents, not CIT or [Washington Mutual] documents. The payment history, default letter, and escrow statement all contain JPMorgan Chase markings, and are JPMorgan Chase documents." U.S. Bank asserts that "Hall, Craft, and Reichardt, as JPMorgan Chase employees, have the requisite personal knowledge necessary to authenticate these documents."

{¶ 49} According to U.S. Bank, any "records that do not contain JPMorgan Chase markings were also properly considered. * * * Eleanor Stocks * * * admitted she executed the Note attached to the Complaint and the Stockses both admitted they executed the Mortgage attached to the Complaint." U.S. Bank asserts that a "court may consider any admission in an answer as evidence in support of a motion for summary judgment. The Stockses' admission that they signed the Note and Mortgage, copies of which were attached to the Complaint, is dispositive on this issue and negated any requirement that U.S. Bank authenticate them."

{¶ 50} Regarding the assignment of the mortgage, U.S. Bank argues that "JPMorgan Chase became the servicer for the Stockses' mortgage loan in September of 2008. * * * Thus, the May 2, 2012 assignment was executed while JPMorgan Chase was the servicer of the loan and incorporated into JPMorgan Chase's records." According to U.S. Bank, the "Hall affidavit establishes that Hall is familiar with how JPMorgan Chase's records are kept and maintained, that the records are kept and maintained in the course of JPMorgan Chase's regularly conducted business activities, and are made at or near the time of the event, by or from information from a person with knowledge." U.S. Bank

asserts that "Hall established personal knowledge sufficient to authenticate the mortgage assignment." U.S. Bank notes that "this court has held that a copy of an assignment that contains a notary acknowledgement is self-authenticating and admissible," and that the "assignment of mortgage * * * contained a notary stamp."

{¶ 51} U.S. Bank asserts that the Washington Mutual checks it submitted "are also admissible. Although on the surface they appear to be documents created by [Washington Mutual], not JPMorgan Chase, the trial court properly considered them. Hall properly authenticated the [Washington Mutual] documents because they fall within the adoptive business records exception." According to U.S. Bank, "JPMorgan Chase purchased and assumed the assets of [Washington Mutual], which included a transfer of [Washington Mutual's] records to JPMorgan Chase." U.S. Bank asserts that a "review of the Hall affidavit establishes that the checks have been incorporated into and are now part of the business records maintained by JPMorgan Chase, and that JPMorgan Chase relies on those records. * * * Thus, they were properly authenticated and are business records and not hearsay."

{¶ 52} Regarding the Stockses' assertion that Craft's affidavit contains a false statement regarding the payment for hazard insurance, U.S. Bank asserts that "Craft based her statement on her review of the JPMorgan Chase payment history, which she properly authenticated and established as a business record. * * * The payment history clearly supports Craft's statement that JPMorgan Chase did not charge Stocks for advancing amounts to pay hazard insurance." According to U.S. Bank, "the letter did not even create a question of fact that could prevent summary judgment because U.S. Bank is not seeking to recover any amounts for advances for hazard insurance."

{¶ 53} Regarding the validity of the mortgage, U.S. Bank asserts, quoting *CitiMortgage, Inc. v. Kermeen*, 2d Dist. Darke No. 2011 CA 2, 2012-Ohio-1655, ¶ 48, that " '[a]defectively executed conveyance of an interest in land is valid as between the parties.' "  U.S. Bank asserts that the "Stockses cannot escape the Mortgage they signed.  The conflicting description of James Stocks' mortgagor status and the omission of their names in the acknowledgment clause of the mortgage do not allow the Stockses to invalidate the Mortgage."  Further, U.S. Bank argues that the "Stockses admitted in their Answer that the Mortgage attached to the Complaint was validly executed in connection with the Note."  According to U.S. Bank, the "bankruptcy cases cited by the Stockses are completely inapposite."  U.S. Bank asserts that "a bankruptcy trustee stands in the shoes of 'a hypothetical bona fide purchaser as of the commencement of the case.'  *In re Burns*, 435 B.R. 503, 507 (Bankr. S.D. Ohio 2010)."  U.S. Bank argues that "a bankruptcy trustee can invalidate a mortgage if it was improperly recorded.  Under Ohio law, a mortgage with a defective acknowledgment clause is not entitled to be recorded. * * * This allows a bankruptcy trustee to avoid a defectively acknowledged mortgage."  U.S. Bank argues that "[t]hese avoidance powers are not available to the mortgagor, and do not affect well-established Ohio law holding that mortgages are valid as between the mortgagor and the mortgagee."  Finally, U.S. Bank argues that the "Stockses are not bona fide purchasers or bankruptcy trustees, and [they] cannot avoid the Mortgage they admittedly signed and of which they received the benefit."

{¶ 54} In Reply, the Stockses argue that none of U.S. Bank's "affiants testified that they have been employed by or reviewed the records for CIT Group or Washington Mutual."  According to the Stockses, "there remains herein a serious question as to

personal knowledge, familiarity and sufficiency of the affiant's statements and knowledge and the reliability of inadmissible evidence attached to the affidavits." The Stockses assert that U.S. Bank's reliance upon *Kermeen* "is misplaced because Appellee has failed to file a motion for reformation of the mortgage at issue herein and because Appellee has failed to provide any evidence of the intent of parties with regard to the mortgage." The Stockses argued that the mortgage is invalid.

{¶ 55}  Civ.R. 56 (C) provides in relevant part:

* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *

{¶ 56}  As this Court has previously noted:

Summary Judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party.  *Hudson v. Petrosurance, Inc.* 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, ¶ 29.  When reviewing a summary judgment, an appellate court conducts a de novo review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).

"De Novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland City Schools Bd. of Edn.,* 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist. 1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119-20, 413 N.E.2d 1187 (1980).   Therefore, the trial court's decision is not granted deference by the reviewing appellate court.   *Brown v. Scioto Cty. Bd. of Comms.,* 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist. 1993).

"To properly support a motion for summary judgment in a foreclosure action, a plaintiff must present evidentiary quality materials showing: (1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the movant is not the original mortgagee, the chain of assignments and transfers; (3) the mortgagor is in default; (4) all conditions precedent have been met; and (5) the amount of principal and interest due." *JPMorgan Chase Bank, N.A. v. Chenoweth*, 2d Dist. Montgomery No. 259[5]3, 2014-Ohio-3507, ¶ 20; *Nationstar Mortgage, LLC v. West*, Montgomery Nos. 25813, 25837, 2014-Ohio-735, ¶ 16; *JPMorgan Chase Bank, N.A. v. Massey*, 2d Dist. Montgomery No. 25459, ¶ 20.

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact for each of the elements of its claim. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988); *Wells Fargo Bank, N. A. v. Goebel*, 2d Dist. Montgomery No. 26244, 2015-

Ohio-38, ¶ 16. Only if this burden is met, the non-moving party then has the burden of providing sufficient evidence to prove that there are material issues of fact that are genuinely contested. *Goebel* at ¶ 17. "Throughout, the evidence must be construed in favor of the nonmoving party." *Id.* In a foreclosure proceeding, when the defendant submits an affidavit averring that he or she has made regular payments and is not in default, the court must view this evidence in the light most favorable to the defendant and find that there is a genuine issue of material fact as to whether he or she is in default. *RBS Citizens, N.A. v. Vernyi*, 9th Dist. Summit No. 26046, 2012-Ohio-2178, ¶ 13.

*Huntington National Bank v. Payson,* 2d Dist. Montgomery No. 26396, 2015-Ohio-1976, ¶ 14-16.

{¶ 57} We will first address the Stockses' argument regarding the validity of the Mortgage. As noted by U.S. Bank, the Stockses in their Answer admitted to the allegations in Paragraph 2 of the Complaint, which provides that the attached Mortgage "was validly executed in connection with the execution of the Note [that the Stockses admitted was executed by Eleanor.] The parties to the Mortgage intended that it attach to the entire fee simple interest in the property." The Stockses also admitted to the allegations in Paragraph 10 of the Complaint, which provides that the Mortgage "is a valid and subsisting lien on the Property." Further, as this Court has previously noted:

> * * * " the Ohio Supreme Court has long held that '[a] defectively executed conveyance of an interest in land is valid as between the parties thereto, in the absence of fraud.' *Citizens National Bank v. Denison* (1956),

165 Ohio St. 89, 95, 133 N.E.2d 329." *Texas Commerce Bank National Association v. Joseph*, 8th Dist. Cuyahoga No. 81097, 2003-Ohio-995, ¶ 20; see also *Seabrooke v. Garcia*, 7 Ohio App.3d 167, 169, 454 N.E.2d 961 (9th Dist. 1982), citing *Denison* and noting that the "reasoning behind such a rule is to bind the parties to that which they intended. The purpose of the acknowledgement statute (R.C. 5301.01) is to provide evidence of execution and authority for recordation. It is not to provide a way to escape for a party who later wishes to renege on his agreement."

*CitiMortgage, Inc. v. Kermeen*, 2d District Darke No. 2011 CA 2, 2012-Ohio-1655, ¶ 48.

**{¶ 58}** While the acknowledgment in the Mortgage does not identify the Stockses as the individuals who appeared before the notary public and executed the Mortgage, the Stockses' admissions in their Answer make clear that they executed the Mortgage with the intent of mortgaging their interest in the property. The Stockses are bound by what they intended, and the Mortgage is accordingly valid as between them and U.S. Bank as the assignee of the Mortgage. Absent fraud, which is not alleged, the Stockses' subsequent arguments to the contrary are insufficient to meet their summary judgment burden.

**{¶ 59}** Regarding the Stockses' assertions that U.S. Bank's affidavits and attached exhibits are "impermissible as evidence," we note that Evid.R. 803, which lists exceptions to the hearsay rule, provides the business records exception as follows:

> (6) Records of Regularly Conducted Activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by,

a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**{¶ 60}** As this Court has previously determined:

\* \* \* "For a document to be admitted as a business record, it must first be properly identified and authenticated 'by evidence sufficient to support a finding that the matter in question is what its proponent claims.' " *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 30, quoting Evid. R. 901(A). "Authenticating a business record 'does not require the witness whose testimony establishes the foundation for a business record to have personal knowledge of the exact circumstances of preparation and production of the document.' " *Jefferson v. CareWorks of Ohio, Ltd.,* 193 Ohio App.3d 615, 2011-Ohio-1940, 953 N.E.2d 353, ¶ 11 (10th Dist.), quoting *State v. Myers*, 153 Ohio App.3d 547, 2003-Ohio-4135, 795 N.E.2d 77, ¶ 60 (10th Dist.). " 'While the witness need not have personal knowledge of the creation of the particular record in question, and need not have been in the employ of the company at the

time the record was made, he must be able to vouch from personal knowledge of the record-keeping system that such records were kept in the regular course of business.' " *State v. Davis*, 62 Ohio St.3d 326, 342, 581 N.E.2d 1362 (1991), quoting *Dell Publishing Co., Inc. v. Whedon*, 577 F.Supp. 1459, 1464, fn. 5 (S.D.N.Y. 1984).

*Fifth Third Mortgage Co. v. Campbell*, 2d Dist. Montgomery No. 25458, 2013-Ohio-3032, ¶ 8.

**{¶ 61}** As noted by the Fifth District, the "rationale behind Evid. R. 803(6) is that if information is sufficiently trustworthy that a business is willing to rely on it in making business decisions, the courts should be willing to rely on that information as well." *Quill v. Albert M. Higley Co.*, 2014-Ohio-5821, 26 N.E.3d 1187, ¶ 44 (5th Dist.). "That an affiant relies on business records for her facts does not mean that the facts are not based on personal knowledge." *Bibbs v. Cinergy Corp.*, 1st Dist. Hamilton No. C-010390, 2002 WL 537628, * 2 (April 12, 2002).

**{¶ 62}** We will first address Reichardt's affidavit and the exhibits attached thereto. Reichardt averred that in her capacity as Vice President, she has access to "Chase's business records, maintained in the ordinary course of regularly conducted business activity," including the records for Eleanor's loan. She averred that her affidavit is "based upon my own personal knowledge of how they are kept and maintained. The loan records for the Borrower are maintained by Chase in the course of its regularly conducted business activities and are made at or near the time of the event, by or from information transmitted by a person with knowledge." Reichardt averred that she personally reviewed the records, including the Note, Mortgage, "Corrective Assignment" to U.S.

Bank, the payment history on the loan and the October 31, 2011 breach letter mailed to Eleanor. We conclude that Reichardt is able to vouch from her personal knowledge of Chase's record keeping system that the exhibits attached to her affidavit were kept in the regular course of Chase's business.

**{¶ 63}** Accordingly, we conclude that the Court properly considered the Note, Mortgage, "Corrective Assignment," Payment History, Notice of Intent to Foreclose, and the August 5, 2011 Annual Escrow Account Statement. We note that the payment history, which is a compilation of data regarding payments made from January 11, 2007 through July 11, 2012, reflects, consistent with Reichardt's affidavit, that check number 1507 was returned for insufficient funds for the August 2011 payment, rendering the August payment due. The payment history reflects, as Reichardt averred, that a payment made in the amount of $2,212.17 was placed into a suspense account, and that a payment of $2,213.17 was received on October 17, 2011, and when combined with the amount in the suspense account, brought the account current for August, 2011, and due and owing for September. The payment history reflects that a payment was received, as averred by Reichardt, on November 21, 2011, in the amount of $2,808.68, and that the amount was placed into a suspense account. Reichardt averred that the amount paid was consistent with the option that required the Stockses to pay the entire shortage of $11,661.65, and that since they failed to do so, the monthly amount due was $3,780.48. According to Reichardt, the loan remained due and owing for September 1, 2011. The payment history reflects no further payments on the loan.

**{¶ 64}** Regarding the Stockses' assertion that Reichardt, in paragraph eight of her affidavit, relies upon hearsay to assert that the loan remained a non-escrow loan until

March 2008, when Chase paid delinquent taxes on the property in the amount of $8,442.96, we note that the payment history reflects an escrow balance on the account of $8,442.96 on March 13, 2008, by means of two deposits in the amounts of $5,918.46, and $2,524.50, which total $8,442.96. Those deposits reflect the first escrow payments made into the account. The attendant "Remarks" on that date on the payment history indicate "County Tax Disbursement" and "Penalty & Interest for delinquent taxes." As the trial court noted, the Stockses acknowledged that they paid their tax obligations pursuant to a "*Delinquent Tax* Contract." We conclude that the payment history supports Reichardt's averment regarding the delinquent taxes and the nature of the loan.

{¶ 65} Regarding the Stockses' argument that Craft's statement regarding the purchase of insurance by Chase for the property is false, we conclude that whether or not the payment was made is not a material fact, since Chase is not seeking reimbursement for any insurance payment, and the record establishes a delinquent tax history.

{¶ 66} Construing the evidence most strongly in favor of the Stockses, we conclude that U.S. Bank supported its motion for summary judgment with competent evidence showing that it is the holder of the Note, endorsed in blank and secured by the valid mortgage, that U.S. Bank is the assignee of the Mortgage, that the Stockses defaulted, and that all conditions precedent have been met. We further conclude that the Stockses failed to meet their burden to establish a genuine issue of material fact. In the absence thereof, we conclude that reasonable minds can only conclude that the trial court properly found that U.S. Bank was entitled to judgment as a matter of law. Accordingly, the Stockses' assigned error is overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and WELBAUM, J., concur.


Copies mailed to:

David A. Wallace
Karen M. Cadieux
Richard A. Boucher
Julia C. Kolber
David Cliffe
Michele Phipps
Robert Byrne
Gregory Dunsky
Hon. Timothy N. O'Connell